**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170627-U

Order filed November 10, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| CLAUDIA MURRAY, | ) | McDonough County, Illinois. |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | Appeal No. 3-17-0627 |
| | ) | Circuit No. 73-D-52 |
| RODNEY MURRAY, | ) | |
| | ) | |
| Respondent-Appellee | ) | |
| | ) | The Honorable |
| (Illinois Department of Healthcare and Family | ) | Heidi A. Benson, |
| Services, Intervenor-Appellant). | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justice O'Brien specially concurred.
Justice Wright specially concurred.

_____

**ORDER**

¶ 1    *Held*:  The trial court erred in denying the agency's motion for the imposition of additional mandatory statutory interest allegedly accruing between May 2007 and January 2017 on a child support arrearage.  The decision of the circuit court is reversed and the matter is remanded with directions.

¶ 2   This appeal, filed by the intervenor, Illinois Department of Healthcare and Family Services ("DHFS" or "Department"), challenges the trial court's denial of its motion for the imposition of additional mandatory statutory interest allegedly accruing on a child support arrearage between May 2007 and January 2017.

¶ 3                                    I. BACKGROUND

¶ 4   On July 5, 1973, a judgment was entered in McDonough County, Illinois, dissolving the two-year marriage of Claudia Murray and Rodney Murray. One child, Jeremy, had been born to the couple in November 1971, and in the judgment the court awarded custody to Claudia and ordered Rodney to pay child support in the amount of $25 per week. This obligation automatically terminated in November 1989 when Jeremy reached age 18.

¶ 5   Our appeal record reflects sporadic filings between the entry of the divorce decree and Jeremy's majority to compel Rodney's payment of support. In 1974, Claudia sought unpaid child support and payment of her attorney fees generated during the dissolution action; an order compelling payment of the attorney fees is in the record but we find no order related to child support. Another petition for unpaid support was filed in 1980 but, again, there is no order in the record. Similarly, in July 1986, a petition alleging defendant's unlawful restraint of the minor child and a growing support arrearage generated no ruling of record by the court. Finally, on September 16, 1986, a Mississippi court sitting in chancery entered an order pursuant to the Uniform Reciprocal Enforcement of Support Act finding an arrearage of $13,100.00 and directing Rodney to make payments of current support in the amount of $100 per month and payments of $25 per month against the arrearage, payable to the Illinois Department of Public Aid. A handwritten note agreeing to and approving the judgment suggests Rodney was present at

2

that proceeding, at least by counsel. No order entered in this case through September 1986 required the payment of interest.

¶ 6        Claudia filed a verified Petition for Support under the Revised Uniform Reciprocal Enforcement of Support Act in McDonough County on December 9, 1987, seeking enforcement of a modified version of the September 16, 1986, Mississippi judgment.  In the petition, she updated the arrearage to $13,775 as of October 1987, sought reinstatement of medical expenses canceled by the Mississippi court, and requested an increase in current support to the greater of $150 per month or 20% of Rodney's net income. In the "Testimony" portion of the Petition, Claudia was asked (1) if she was currently receiving assistance from "the (Welfare Department)" and (2) if she and her child would need to "apply to the (Welfare Department)" and "become public charges" if Rodney failed to pay support.  She answered "no" to both questions.

¶ 7        Although it is unclear what action may have been taken on the modified petition with its supporting documents, the content of a "Transmittal Order" entered the same day suggests it may have been sent to the Mississippi court for further action. That order stated that "when an order of support is entered, payments should be forwarded to the Illinois Department of Public Aid." It also directed that three certified copies of the Transmittal Order and verified petition be sent to the Department of Public Aid to be forwarded to the Mississippi Title IV-D agency. There is nothing in the record evidencing a ruling on the verified petition by the court in either McDonough County or in Mississippi. Indeed, the record is devoid of documentation of *any* activity for the ensuing twenty years.

¶ 8        On October 4, 2007, DHFS filed a petition in McDonough County to intervene in the dissolution action and a petition for entry of judgment against Rodney, seeking $19,920 in unpaid child support plus interest accrued as of April 2007. Notice was sent by regular mail to

3

Rodney at an address in Tennessee. No return receipt was requested. Rodney never answered or otherwise appeared in response to this petition and he would later claim that he never received notice or summons in that action.

¶ 9        In a November 20, 2007, default order entered in the dissolution action, the trial court checked the box for Rodney's net income but left the space for the information blank, suggesting that data was unavailable to the court.  The court also found that as of April 30, 2007, Rodney had no current child support obligation but did have a total arrearage of $39,549.45, consisting of $19,920 in unpaid child support and $19,629.45 in accrued interest; and ordered Rodney to pay $50 per week toward the arrearage beginning November 23, 2007. At this time, Rodney's son, Jeremy, was thirty-six years old.

¶ 10       Under "Payment Arrangements" the court ordered the immediate issuance of a Notice to Withhold Income to be served on Rodney's employer with directions to make payments to the State Disbursement Unit. The State's later worksheets show that, despite the November 2007 starting date ordered by the court, no payments were withheld from Rodney's pay until 2009. On the final page of the 2007 judgment under "Other," the court checked the box indicating that "[t]here is no just reason to delay enforcement or appeal of this order," rendering the default order final and appealable.

¶ 11       On April 18, 2017, DHFS filed a new petition to determine arrearage, requesting that the court (1) find that Rodney had discharged his child support obligation but had accrued an additional $9,879.93 in interest during the intervening 10 years, and (2) order that he now owed $29,256.38 in interest only. To document its claim DHFS attached "support calculation" and "interest calculation" worksheets to its petition, demonstrating that as of April 2007, Rodney had had an unpaid support balance of $19,920 and $19,629.45 in accrued interest. The Department

4

alleged that from May 2007 to January 2017, Rodney accrued $9,879.93 in new interest. Since the 2007 judgment, Rodney had paid $20,173 on his total obligation, fully discharging the unpaid child support amount of $19,920 by July 2016. The new balance of $29,256.38 now claimed by the Department is solely interest.

¶ 12    In June 2017, the trial court rejected DHFS's claim for additional interest, and found that as of January 31, 2017, Rodney owed $19,625.45 consisting of only interest, that his monthly income consisted of $1,100 in social security retirement, and ordered him to pay $200 per month. DHFS sought reconsideration, arguing that the trial court had failed to apply $9,879.93 in interest accrued between May 1, 2007, and January 31, 2017, as required under section 505 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505 (West 2019)).

¶ 13    As his August 11, 2017, "response to petition for rehearing," Rodney, speaking in this record for the first time since 1986, filed a document with the circuit court "invok[ing] the affirmative defense of [l]aches" and arguing that the entire action was barred because Claudia and DHFS had "sat on their rights and duty" causing interest to accrue unnecessarily. He also asserted, *inter alia*, that Claudia had moved out of state and taken the child, denying him visitation; that he had a good faith belief that she was abandoning child support in favor of denying his exercise of any parental rights; that neither Claudia nor DHFS had made any effort to secure support for 30 years; and that by the time his debt was paid off his son would be eligible for social security. The court denied the motion to reconsider, making no reference to the *laches* argument in its order.

¶ 14    Rodney's second post-1986 utterance of record took the form of a letter of apology to the circuit judge after the denial of the motion to reconsider. In that letter, after expressing regret for

5

being "rude and unprofessional," he claims, *inter alia,* an authorized temporary post-divorce variation, approved by the caseworker but not the court, in how support was paid; Claudia's relationship with a drug addict and its aftermath; her move to Colorado with Jeremy (their son) and the loss of contact and visitation with his son; an incident in which he alleges Claudia gave permission for him to take his son to Mississippi for a visit and then swore out a warrant for his arrest for kidnapping; his being informed of the $19,920 support debt, the two-year delay in withholding payments, his payment of the past support, and his alleged "release" from any further debt; and his subjective belief the case was over.

¶ 15        DHFS appealed.

¶ 16                                II.  ANALYSIS

¶ 17        On appeal, DHFS argues that the trial court failed to apply statutorily accrued interest from May 1, 2007, to January 31, 2017, to Rodney's child support arrearage and that $9,879.93 in interest should be added to the trial court's June 2017 judgment. Prior to the appointment of the panel in this case, Rodney tendered a "brief" that raised *laches* but was rejected as noncompliant with supreme court rules. Because Rodney did not submit a revised response, there is no appellee's brief in this case. We also note that there are form orders of judgment denying DHFS's request for a declaration of additional interest and its subsequent motion for reconsideration. However, there are no reports of any proceedings and nothing which suggests a basis for the decision being currently appealed. There is also no indication of whether the court considered or made any ruling on Rodney's claim of *laches*; there is no reference to *laches* in the circuit court's orders. Despite the appearances of extensive deficiencies in the record, we can decide the legal merits of the claimed error raised by DHFS without further aid. See *First Capital Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

6

¶ 18                                    A. Calculation of Interest

¶ 19            Child support provides for the reasonable and necessary physical, mental, and emotional

health needs of a child. *In re Marriage of Edwards*, 369 Ill. App. 3d 1035, 1039 (2006). Section

505 of the Marriage Act governs the guidelines for child support obligations. Subsection (b)

states:

> "A support obligation, or any portion of a support obligation,
>
> which becomes due and remains unpaid as of the end of each
>
> month, excluding the child support that was due for that month to
>
> the extent that it was not paid in that month, shall accrue simple
>
> interest as set forth in Section 12-109 of the Code of Civil
>
> Procedure." 750 ILCS 5/505 (West 2019).

¶ 20            Section 12-109 mandates the interest on judgments. Subsection (b) states, in relevant

part:

> "Every judgment arising by operation of law from a child support
>
> order shall bear interest as provided in this subsection. The interest
>
> on the judgments arising by operation of law from child support
>
> orders shall be calculated by applying one-twelfth of the current
>
> statutory interest rate as provided in Section 2-1303 to the unpaid
>
> child support balance as of the end of each calendar month. The
>
> unpaid child support balance at the end of the month is the total
>
> amount of child support ordered, excluding the child support that
>
> was due for that month to the extent that it was not paid in that
>
> month and including judgments for retroactive child support, less

7

all payments received and applied as set forth in this subsection. The accrued interest shall not be included in the unpaid child support balance when calculating interest at the end of the month."

735 ILCS 5/12-109 (West 2019).

¶ 21   With regard to child support, a judgment is the amount of each payment or installment of support, and each judgment is entered on the date the payment is due. 750 ILCS 5/505(d) (West 2019). The interest applied to child support arrearages is mandatory. *Illinois Department of Healthcare and Family Services ex rel. Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483, 487-88 (2011). Under the statute upon which the Department relies, it is also "simple"—that is to say, it does not compound. Thus, once the interest on each missed payment is calculated and assessed, it cannot increase.

¶ 22   The requirement that mandatory interest accrue on unpaid support installments arose in 1987. An early iteration of section 505(b) was amended, effective May 11, 1987, to impose mandatory simple interest on each unpaid child support installment as it became due. The amendment also included, as section 505(c), an amnesty provision allowing support debtors who already had an arrearage on the effective date of the amendment to discharge their newly acquired interest obligation by paying 20% of the new debt. That amnesty provision expired in 1993, after the 1987 judgment order and well before the 2007 initiation of the current proceedings.

¶ 23   As of January 2017, the Department claimed that Rodney had an unpaid balance of $29,256.38 that consisted of only accrued interest. The trial court determined that Rodney had an arrearage of $19,629.45, which was the amount of interest that was alleged to have accrued as of April 2007. However, under section 505 and section 12-109, an unpaid child support balance

8

must accrue interest and interest did continue to accrue on Rodney's arrearage until July 2016, when he made his final payment on the unpaid child support balance. Therefore, the trial court erred when it did not apply interest accrued from May 2007 to July 2016, when Rodney made the final payment of the child support balance and only had a remaining balance of accrued interest. Accordingly, we reverse the trial court's ruling and remand for a recalculation of the arrearage to include accrued interest from May 2007 to July 2016.

¶ 24                                                B. *Laches*

¶ 25        Drifting below the surface of this case are disquieting equitable concerns that should at least be acknowledged even if we are unable to resolve them. One such concern is *laches*, which Rodney raised for the first time in the circuit court in his response to DHFS's 2017 motion for reconsideration. As we understand the known pertinent facts, Rodney was aware of the September 1987 Mississippi judgment against him because he or his legal representative appears to have agreed to the monthly payment amount by initialing the court order. We have nothing in the record indicating he knew of the action for enforcement filed in McDonough County in December 1987 or the requirement that he make payments to the Mississippi Title IV-D agency. As far as we can determine the McDonough County judgment was entered, Rodney received no notice of either the proceeding or the judgment, and the case simply languished for the next 20 years, during which time the predicate Mississippi judgment remained in force and viable in McDonough County.

¶ 26        When DHFS filed its petition to intervene in 2007, it provided "notice" to Rodney by regular mail with no mechanism for confirming whether he actually received the notice. He never answered or otherwise appeared in the 2007 proceedings and later claimed he had never received notice or summons. The 2007 judgment was entered by default. Rodney claims it was

9

not until two years later, in 2009, when the garnishment of his wages began that he learned of the judgment.

¶ 27    In these circumstances, Rodney would have had no opportunity to timely or properly allege and prove his claim of *laches*, which is an affirmative defense required to be asserted in a defendant's answer. 735 ILCS 5/2-613(d) (West 2019). Nor could he have timely appealed a judgment of which he had no contemporaneous knowledge. He did, however, personally and actually learn in 2009, when the wage garnishment began, that at least 22 years had elapsed since any effort had been made to secure payment of child support from him and that he had accrued a significant interest obligation because of that delay. However, he apparently made no effort in 2009 to challenge the judgment; rather, he acquiesced in the garnishment of his wages to satisfy the court-ordered support and interest payments, without any objection apparent in the record. Arguably, in so doing, he effectively waived any objection to the delay in enforcing his support obligation. However, his assertion of *laches* in the first court proceeding he had received notice of since 1986, signals that any waiver was involuntary and unintended. The record reveals neither a discussion nor a decision on his claim of *laches* in the circuit court. Accordingly, in addition to noting that, even now, he has not pursued the *laches* argument, we do not find *laches* to be a viable defense to Rodney's payment obligation at this state of the litigation.

¶ 28                                III.  CONCLUSION

¶ 29    The judgment of the circuit court of McDonough County is reversed, and the cause is remanded for further proceedings.

¶ 30    Reversed and remanded.

¶ 31    JUSTICE O'BRIEN, specially concurring:

10

¶ 32   I agree with the majority on every part of its decision except for the discussion regarding *laches*. I would find that the issue is not before this court. The trial court's order from which DHFS appealed does not mention *laches* and Murray did not submit a response brief raising the issue.

¶ 33   For this reason, I specially concur.

¶ 31   JUSTICE WRIGHT, specially concurring:

¶ 32   I agree that the trial court did not specifically reference a laches defense in its decision. However, since Rodney raised the laches defense in the trial court, I believe it is fair to infer that the trial court denied the additional interest requested by the State on that basis. For this reason, the author's discussion of laches facilitates a complete understanding of our unanimous conclusion that the trial court's ruling must be reversed.

¶ 33   I write separately, in part, to express my view that, while I concur in the outcome of this appeal, I recognize the difficulties presented to the trial court. This matter involved a prolonged case history with court orders from two states and allegations of parental alienation, deficient notice, and an unexplained but extensive delay by the State. Nonetheless, as a matter of law, I recognize the statutory language stating, "[c]hild support judgments, including those arising by operation of law, may be enforced at any time." 735 ILCS 5/12-108(a) (West 2018); See also In re Marriage of Saputo, 363 Ill. App. 3d 1011, 1013-14 (2006). Like my colleagues, I point out that neither the trial court nor the parties have fully or specifically addressed the laches issue. Therefore, I agree that the trial court's decision cannot be upheld based upon this silent record.

¶ 34   For these reasons, I specially concur.